UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK
------------------------------------------------------------x

BEN HUR MOVING & STORAGE, INC.,

                Plaintiff,                              Case No.:
- against -                                          08-CIV-6572 (JGK)

THE BETTER BUSINESS BUREAU OF
METROPOLITAN NEW YORK INCORPORATED,
THE BETTER BUSINESS BUREAU, INC., d/b/a
THE BETTER BUSINESS BUREAU SERVING
METROPOLITAN NEW YORK, d/b/a BBB OF
METROPOLITAN NEW YORK, INC. a/k/a BBB,
a/k/a BETTER BUSINESS BUREAU, a/k/a THE
BETTER BUSINESS BUREAU OF THE
STATE OF NEW YORK, INC.

                Defendants.

**Demand for Jury Trial**
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

This memorandum of law is submitted by the Plaintiff BEN HUR MOVING & STORAGE, INC. (hereinafter "Plaintiff") in support of Plaintiff's Order to Show Cause seeking a Preliminary Injunction against the Defendants THE BETTER BUSINESS BUREAU OF METROPOLITAN NEW YORK INCORPORATED, d/b/a THE BETTER BUSINESS BUREAU SERVING METROPOLITAN NEW YORK, d/b/a BBB OF METROPOLITAN NEW YORK, INC. a/k/a BBB, a/k/a BETTER BUSINESS BUREAU, a/k/a THE BETTER BUSINESS BUREAU OF THE STATE OF NEW YORK, INC. (collectively "BBB") enjoining the BBB, during the pendency of this action, from listing any complaint history under Plaintiff's name on its database or

website or other publication and instead directing the BBB, under Plaintiff's name, to list the words "under review" or "records unavailable" thereby issuing a neutral report on the Plaintiff's complaint history during the pendency of this action, as well as for such other, further and different relief as this Court deems just and proper.

## STATEMENT OF FACTS

For a full recitation of facts, this Court's attention is respectfully directed to the Affirmation of Gil Santamarina, Esq., sworn to on the 8th day of July, 2008, and the Affidavit of Alon Modlin, sworn to on the 23rd day of July, 2008 and the affidavit in further support of Alon Modlin, sworn to on the 7th day of August, 2008.

The facts relevant to the instant application are that the BBB is engaging in a fraud that penalizes non-BBB member businesses by listing all complaints received by the BBB regarding those non-member businesses while concealing the complaints it receives against businesses that are BBB members. Thus, businesses that are not members of the BBB are deliberately and falsely made out by the BBB to appear to have worse complaint records than those of its members. It is in this fashion that BBB extorts fees from its members; pay or face irreparable harm to their businesses.

## POINT I

### THE FRAUD, NOT THE SPEECH IS THE FOCUS OF THE INJUNCTION

Although the general rule is that a court of equity will not place an injunction on publication of libel (*see, e.g.,* Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), there are notable exceptions to the rule. The court of Bihari v. Gross, 119 F.Supp.2d 309, 56 U.S.P.Q.2d 1489 (S.D.N.Y. 2000) noted, "a preliminary injunction is more readily available where the defamation is in furtherance of another

2

tort." *Id.* at 326. The court quoted Trojan Elec. & Mach. Co. v. Heusinger, 162 A.D.2d 859, 557 N.Y.S.2d 756, 758 (3d Dep't 1990) which provided that "'While equity will not intervene to restrain the publication of words on a mere showing of falsity...[a]n injunction will lie to restrain libel when the publication is made as part and parcel of a court of conduct deliberately carried on to further a fraudulent or unlawful purpose.'" *Id.* at 326. Of course, this is precisely what is alleged in the Complaint. *See also* Horne v. Radiological Health Services, P.C., 371 N.Y.S.2d 948 (N.Y. Supreme Ct. 1975); West Willow Realty Corp. v. Taylor, 198 N.Y.S.2d 196, 198 (N.Y. Supreme Ct. 1960). The court in the Trojan Elec. case went on to quote Robert D. Sack: "'In unusual situations where, for example, defamatory words are in aid of another tort such as fraud, injunction may issue.'" 1 Robert D. Sack, Sack on Defamation, § 10.6.1. (3d ed. 1999), *Id.* at 326.

As such, courts will intervene to restrain the publication of words "where restraint becomes essential to the preservation of a business or other property rights threatened by tortious conduct in which the words are merely an instrument of and incidental to the conduct." Trojan Elec. & Mach. Co. v. Heusinger, 162 A.D.2d 859, 557 N.Y.S.2d 756, 758 (3d Dep't 1990). Furthermore, courts hold that "while equity will not intervene to restrain the publication of words on a mere showing of falsity, it may intervene where restraint becomes essential to the preservation of a business or other property rights threatened by tortious conduct in which the words are merely an instrument of and incidental to the conduct." *Id.* at 860. *See also* Goodwins, Inc. v. Hagedorn, 303 N.Y. 300, 305 (New York Court of Appeals 1951); Wolf v. Gold, 9 A.D.2d 257, 259 (1st Dept. 1959). Of course, this court must defer to New York State law in addressing the instant pendent state claims which include libel and fraud, since "in applying supplemental

3

jurisdiction over pendent state law claims, federal courts must apply state substantive law." Peele v. New York City Dept. of Social Services, 112 F.3d 505, 506 (2nd Cir. 1996). See Promisel v. First American Artificial Flowers, Inc., 943 F.2d 251, 257 (2nd Cir. 1991). See also Baker v. Coughlin, 77 F.3d 12, 15 (2nd Cir. 1996); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In the instant case, Plaintiff has demonstrated that the BBB engages in libel and slander not merely to defame the Plaintiff, but in furtherance of its unlawful and fraudulent scheme to extort monies from business via its membership program. As such, a preliminary injunction should be issued directing the BBB to list the words "under review" or "records unavailable" under Plaintiff's name on its website and other publications because listing all complaints it receives against Plaintiff (but not those complaints received against its members) is defamatory and published solely in aid of another tort – fraud – and as such, the BBB is subject to restraint. See Wolf v. Gold, 19 A.D.2d 257, 93 N.Y.S.2d 36, 38 (1st Dept. 1959).

Courts recognize that the remedy of a preliminary injunction against words is proper in cases where the exigency is clear, as it is in the instant case since Plaintiff would suffer irreparable harm if the BBB is not stayed from further assassinating the Plaintiff's business reputation in New York. See Burke v. Kingsley Books, Inc., 208 Misc. 150, 142 N.Y.S.2d 735 (Sup Ct. NY County 1955). The court in Burke held that "it is within the recognized jurisdiction of a court of equity to restrain, under certain circumstances, the reiteration of false, misleading and fraudulent statements – notwithstanding the constitutional guarantees against infringement upon the rights of free speech and free press." Id. at 749. In the instant case, a preliminary injunction should be

granted against the BBB because it is attempting to spread false and misleading information about the Plaintiff's business reputation compared to that of his competitors who happen to be members of the BBB.

BBB's anticipated arguments to the contrary should be denied because, as the Supreme Court stated, "the principle as to immunity from previous restraint is stated too broadly...[and] the protection as to previous restraint is not absolutely unlimited." Near v. Minnesota, 283 U.S. 697, 715-716 (1931). It was furthermore held in that case that the liberty of speech and of press is not an absolute right, and that if a person "publishes what is improper, mischievous or illegal, he must take the consequence of his own temerity." Id. at 714.

As alleged in the complaint and as demonstrated in the supporting affidavits, Defendant BBB has engaged in an unlawful scheme of suppressing consumer complaints when a company is a paying member of the BBB, and in some cases inflating the number of complaints listed against a company when that company is *not* a paying member of the BBB.

It should be noted that BBB would suffer no prejudice by putting the words "under review" under Plaintiff's name on the BBB's website since it has done so at one point in the recent past when the Plaintiff was attempting to resolve a fee dispute with BBB.

## POINT II

## THE SOUGHT INJUNCTION IS SPECIFIC, DEALS WITH COMMERCIAL SPEECH, AND IS NOT A COMPELLING FREE SPEECH CONCERN

As set forth below, courts generally make a distinction between private free speech rights and commercial speech rights, and in doing so, accord weaker First Amendment rights with respect to commercial speech. First, applicable Supreme Court decisions reveal that the BBB's publication should be characterized as commercial speech, because it is "expression related solely to the economic interests of the speaker and its audience." Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 763 (1976). Moreover, the Court held that commercial speech essentially "constitutes paradigmatic commercial speech, because its fundamental purpose is to propose an economic transaction." Id. As such, the Supreme Court has recognized "the common sense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." Ohralik v. Ohio State Bar Association, 436 U.S. 447, 455-456 (1978).

In the instant case, there should thus be little dispute that the BBB's publications constitute commercial speech, since they generally work to encourage consumers to seek the services or products of a particular member business, and dissuade the consumer from purchasing the goods or services of a non-member businesses whose complaint history will invariably be worse that that of its members. The Southern District of New York has held that the factors helpful in determining whether speech is commercial for the purposes of the First Amendment, include whether the communication serves as an advertisement, it refers to a specific product or service, and that "the speaker has an

6

economic motivation for the speech." World Wrestling Federation Entertainment, Inc. v. Parents Television Council, 142 F.Supp.2d 514, 525 (S.D.N.Y. 2001). In the instant case, there is no doubt that the BBB's publications and its database satisfy these three requirements – a good review of the BBB's member business essentially advertises the member business's products and services. Moreover, since the BBB's corrupt enterprise is primarily funded by the BBB's membership program, the BBB certainly has strong economic motivations for only publishing positive reviews of its member business, while at the same time maligning or disparaging the reputations of non-member businesses.

Because the BBB's publications and website/database are commercial speech, the Supreme Court mandates that "the Constitution accords a lesser protection to commercial speech than to other constitutionally protected expression." Central Hudson Gas & Electric Corporation v. Public Service Commission of New York, 447 U.S. 557, 563 (1980). In so holding, the Court stated that "commercial speech, being the offspring of economic self-interest, is a hardy breed of expression that is not particularly susceptible to being crushed by overbroad regulation." Id. As such, the Court held that "only commercial speech that is not false or deceptive is protected", and that "government may ban forms of commercial communication that are more likely to deceive the public than to inform it, or are related to illegal activity." Id. In the instant case, we already know that the BBB's false and misleading publications can be directly attributed to its economic self-interest in satisfying its member businesses, and its concurrent effort to urge all the non-member businesses to join the BBB's program. As such, this court has the right to issue an injunction against the BBB, since "there can be no constitutional

7

objection to the suppression of commercial messages that do not accurately inform the public." *Id.*

Since the instant request for an injunction stems from Defendant's tortious acts rather than a dispute over free speech, an injunction should be issued herein. The case for an injunction is even stronger because Plaintiff is asking for a sentence to be removed and replaced with very specific words. Plaintiff is not asking for a broad injunction that would restrain free speech which courts have, in the past, held invalid. In a Supreme Court case, the Court addressed whether a local union could to repress the free speech rights of picketers who were interfering with the business practices of the union members. The Court held that "in the exceptional cases warranting restraint upon normally free conduct, the restraint ought to be defined by clear and guarded language. According to the best practice, a judge himself should draw the specific terms of such restraint and not rely on drafts submitted by the parties." <u>Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies</u>, 312 U.S. 287, 296, 61 S.Ct. 552 (U.S. 1941). In the instant case, however, Plaintiff has explicitly provided the court the specific means with which to issue a preliminary injunction against the BBB's speech, and thus it should not be characterized as a prior restraint against the BBB free speech rights.

Indeed, for the following reasons, the instant request that Plaintiff's complaint history with the BBB be listed as being "under review" or "records unavailable" on its website should not even be characterized as being a prior restraint on speech, since Plaintiff's request is for a content-neutral injunction against the BBB. Specifically, the Plaintiff is not requesting that the BBB be ordered to say one thing or another concerning

Plaintiff's complaint history; instead, it is requesting that BBB say that Plaintiff's history is "under review" or "records unavailable" (as BBB had no problem doing in the past) which is tantamount to its saying nothing. The Second Circuit has held that "a content-neutral injunction that restricts, but does not absolutely bar, particular expression is not a prior restraint." Pro-Choice Network v. Schenck, 34 F.3d 130, 139 (2nd Cir. 1994).

Finally, the BBB's speech should be characterized as commercial speech, wherein "in light of the greater potential for deception or confusion in the context of certain advertising messages, content-based restrictions on commercial speech may be permissible." Bolger v. Youngs Drug Product Corp., 463 U.S. 60, 65 (1983). *See also* In re R.M.J, 455 U.S. 191, 200 (1982); Rudgayzer & Gratt v. Enine, Inc., 749 N.Y.S.2d 855 (N.Y. Civ. Ct. 2002). As such, courts have repeatedly held that certain features of commercial speech differentiate it from other varieties of speech in ways that suggest that a different degree of protection is necessary to insure that the flow of truthful and legitimate commercial information is unimpaired. See Friedman v. Rogers, 440 U.S. 1, 10 (1979). Because the BBB's publications constitute commercial speech subject to weaker 1st Amendment protection, it is not prior restraint should the court issue an injunction preventing the BBB's fraudulent and malicious slander of Plaintiff.

## POINT III

### MONETARY DAMAGES ARE NOT ADEQUATE

Another reason why courts are reluctant to place injunctions on libel is because there is often an after-the-fact remedy in the form of damages. *See* Bihari v. Gross, 119 F.Supp.2d 309, 325 (S.D.N.Y. 2000). Although Plaintiff is of course seeking damages, the damage to Ben Hur in the meantime could be irreparable. Many consumers look to

9

the Better Business Bureau for guidance, particularly in Plaintiff's business - the moving and storage business. An artificially high complaint history such as the BBB has been publishing about Plaintiff could irreparably damage its reputation in ways to which a dollar value could not be calculated.

Monetary damages would not be able to cover this loss, for it would be impossible to calculate how many people read the review of Ben Hur, decided not to employ them, and then told acquaintances not to use Ben Hur because of what was on the Better Business Bureau's Web site. In fact, courts have addressed in the past the issue of assessing a business's damages when it has been libeled. For example, in Boule v. Hutton, 320 F.Supp.2d 132, 134-140 (S.D.N.Y. 2004), the court held that when a business's reputation was damaged due to disparagement and slander, "damage to…reputation was not susceptible to precise calculation…the false statements did destroy [the] value" of the business's art collection enterprise not readily ascertainable by money damages.

Other courts in the past have likewise held that a business suffers irreparable harm due to a defendant's libel, "because it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2nd Cir. 1999); Towers Fin. Corp. v. Dun & Bradstreet, Inc., 803 F.Supp. 820, 822-823 (S.D.N.Y. 1992). *See also* Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2nd Cir. 1990), where the court found irreparable harm "where plaintiff's [business] reputation among customers and potential customers will be severely damaged…[and the injury] is both imminent and incapable of being fully

remedied by monetary damages." It is thus that there have been findings of irreparable harm "by showing, inter alia, the difficulty of calculating damages for certain injuries, including possible injury to business reputation and good will." Supermarket Services, Inc. v. Hartz Mountain Corp., 382 F.Supp. 1248, 1256 (S.D.N.Y. 1974). Such principles should likewise be applied in the instant case, where an injunction should be issued in favor of the Plaintiff since it is not concretely ascertainable the extent to which it has suffered damages via loss of customers and business reputation due to the BBB's maliciously dealt libel.

In harming the Plaintiff's business reputation via the BBB's publications and database, the BBB diluted Plaintiff's trademark, and its actions constitute false description and unfair competition. It is well established that a trademark need not be registered to be protected from infringement or tarnishment of its reputation. *See* 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 407 (2nd Cir. 2005). As such, a court recently held that "it is clearly established that Section 43(a) of the Lanham Act protects unregistered trademarks." Courtenay Communications Corp. v. Hall, 2007 WL 2089359 (S.D.N.Y. 2007). *See also* Two Pesos v. Taco Cabana, 505 U.S. 763, 768 (1992). Courts thus find that an unregistered trademark is entitled to protection if it "is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 768. In the instant case, the BBB cannot dispute that Plaintiff's trademark for moving services is well-known in the State of New York, that the mark is furthermore inherently distinctive, and is therefore worthy of protection from infringement and tarnishment of reputation under the Lanham Act.

11

The BBB essentially issued its publications regarding the Plaintiff and other businesses as part of its effort to raise money through its membership program, and such conduct affected the Plaintiff's ability to attract and retain consumers of its services. The BBB, by its conduct, has thus severely tarnished Plaintiff's trademark, where its name is well-known within New York State for moving services. As a court recently held, such attempts at tarnishing the Plaintiff's famous trademark constitutes dilution of the trademark by tarnishment, and should thereby subject the wrongdoers to prosecution under the Lanham Trade-Mark Act Section 43, 15 U.S.C. Section 1125. *See* World Wrestling Federation Entertainment, Inc. v. Parents Television Council, 142 F.Supp.2d 514, 529 (S.D.N.Y. 2001). It should also be noted that Plaintiff's trademark should be deemed a valid mark under the Lanham Trade-Mark Act, since it constitutes a mark for Plaintiff's moving services that are well-recognized in New York State. Since the Plaintiff cannot accurately measure the extent to which his business's trademark has been damaged by the BBB's unlawful conduct, only a preliminary injunction issued by the court would serve as a viable remedy for the Plaintiff during the pendency of this action; it would serve to stay any further efforts by the BBB to assassinate the Plaintiff's business reputation in the community.

It also cannot be denied that the BBB's conduct, in addition to its slander of Plaintiff, has also tortiously interfered with the Plaintiff's prospective business. As a court recently held, a defendant subjects himself to such a lawsuit when it interferes with the plaintiff's business relations with a third party using dishonest, unfair, or improper means. *Id.* at 532. In the instant case, it is undeniable that the BBB has sought to harm the Plaintiff's business relations with third parties ever since the Plaintiff was expelled

12

from the BBB's membership program by publishing all complaints it received against Plaintiff (but not publishing all complaints it receives against BBB member businesses and in some instances publishing complaints against Plaintiff that it knew, or should have known, did not actually concern Ben Hur. As a result of the BBB's malicious conduct, the Plaintiff has incurred irreparable injury to its business reputation, and is thus deserving of a preliminary injunction.

Courts furthermore hold that a plaintiff can obtain a preliminary injunction under Civil R.I.C.O. once it establishes a likelihood of suffering irreparable harm to the court. *See* Trane Co. v. O'Connor Securities, 718 F.2d 26, 29 (2nd Cir. 1983); Marshall Field & Co. v. Icahn, 537 F.Supp. 413, 420 (S.D.N.Y. 1982). Since Plaintiff would suffer irreparable injury to its business reputation in the absence of a preliminary injunction via the instant Civil R.I.C.O. action, and since such injury is not capable of being accurately measured by monetary damages, the court should issue such relief in equity to the Plaintiff immediately during the pendency of this action.

## CONCLUSION

As set forth above, a Preliminary Injunction should be issued enjoining the BBB, during the pendency of this action, from listing any complaint history under Plaintiff's name on its database or website or other publication and instead directing the BBB, under Plaintiff's name, to list the words "under review" or "records unavailable" thereby issuing a neutral report on the Plaintiff's complaint history during the pendency of this action, as well as for such other, further and different relief as this Court deems just and proper.

Dated: New York, New York
       August 8, 2008

                                    SANTAMARINA & ASSOCIATES

                                    By: Gil Santamarina, Esq. (GS-2689)
                                    Attorneys for Plaintiff
                                    260 Madison Avenue, 18th Floor
                                    New York, New York 10016
                                    (212) 965-1678

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

BEN HUR MOVING & STORAGE, INC.,                 08-CIV-6572 (JGK)

                Plaintiff,
                                                 **CERTIFICATE OF SERVICE**

    - against -

THE BETTER BUSINESS BUREAU OF
METROPOLITAN NEW YORK INCORPORATED,
THE BETTER BUSINESS BUREAU, INC., d/b/a
THE BETTER BUSINESS BUREAU SERVING
METROPOLITAN NEW YORK, d/b/a BBB OF
METROPOLITAN NEW YORK, INC. a/k/a BBB,
a/k/a BETTER BUSINESS BUREAU,

                Defendants.
----------------------------------------------------------X

       On August 8, 2008, I served a true copy of the annexed Memorandum of Law and Supplemental Affidavit by mailing same in a sealed envelope with pre-paid, first class postage, deposited in an official depository of the U.S. Postal Service addressed to the following addressee(s):

To:    C. MacNeil Mitchell, Esq.
        Winston & Strawn LLP
        200 Park Avenue
        New York, New York 10166-4193
        *Attorneys for Defendant BBB.*

Dated: New York, New York
         August 8, 2008

                                                        SANTAMARINA & ASSOCIATES

                                                        By: Gil Santamarina, Esq. (GS-2689)
                                                         Attorneys for Plaintiff
                                                          260 Madison Avenue, 18th Floor
                                                          New York, New York 10016
                                                          (212) 965-1678