UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEN HUR MOVING & STORAGE, INC., :

                                                     :

                      Plaintiff, :

     - against- :

                                                     :     08 Civ. 6572 (JGK)

THE BETTER BUSINESS BUREAU OF :
METROPOLITAN NEW YORK INCORPORATED, :
THE BETTER BUSINESS BUREAU, INC., d/b/a :
THE BETTER BUSINESS BUREAU SERVING :
METROPOLITAN NEW YORK, d/b/a BBB OF :
METROPOLITAN NEW YORK, INC. a/k/a BBB, :
a/k/a BETTER BUSINESS BUREAU, a/k/a THE :
BETTER BUSINESS BUREAU OF THE :
STATE OF NEW YORK, INC., :

                                        :

                     Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW OF DEFENDANT, THE BETTER BUSINESS BUREAU OF METROPOLITAN NEW YORK INC., IN SUPPORT OF ITS MOTION TO DISMISS

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendant*
*The Better Business Bureau*
*Of Metropolitan New York Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF BACKGROUND FACTS ........................................................... 1

ARGUMENT ......................................................................................................... 5

POINT I    PLAINTIFF FAILS TO STATE A DEFAMATION CLAIM AGAINST BBB ........... 6

A.    Plaintiff Has Not Sufficiently Pleaded Its Defamation Claim. ................................. 6

B.    Plaintiff Has Failed To Plead Material Prima Facie Elements of its Defamation
      Claim. .................................................................................................................... 8

    1.    Plaintiff Has Failed To Plead "Actual Malice" Sufficient To Overcome
          BBB's Qualified Privileges. ............................................................................ 8

        a)    "Common Interest" Privilege. ................................................................. 8

        b)    "Fair Comment"/Expression of Opinion. ............................................. 10

C.    The Court Should Decline to Exercise  Supplemental Jurisdiction Over the
      Defamation Claim. ............................................................................................... 12

POINT II  PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED ....................................... 13

A.    Plaintiff Has Failed to Adequately Aver A RICO "Enterprise" as Distinct From A
      RICO "Person.". .................................................................................................. 13

B.    Plaintiff Does Not Have Standing To Bring A RICO Claim. .................................. 14

C.    The Predicate Acts Averred in the Complaint Are Insufficient To Sustain
      Plaintiff's RICO Claim. ....................................................................................... 16

    1.    Plaintiff Has Not Pled Extortion. ................................................................... 16

    2.    Plaintiff Failed to Adequately Plead the Predicate Acts of  Mail Fraud,
          Extortion and Racketeering via Interstate Means. .......................................... 17

        a)    The Complaint Fails to Plead the Predicate Act Of Mail and Wire
              Fraud with the Requisite Particularity. ................................................ 17

        b)    Plaintiff's Averments Do Not Constitute Mail or Wire Fraud. ............. 18

        c)    The Complaint Does Not Aver Reasonable Reliance On Any
              Misrepresentations. ............................................................................ 18

    3.    The Complaint Fails to Plead a "Pattern of Racketeering Activity"
          Arising out of Alleged Violations of State Penal Codes. ................................. 19

CONCLUSION .................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amodei v. N.Y. State Chiropractic Ass'n,*
  160 A.D.2d 279, 552 N.Y.S.2d 713 (1st Dep't 1990),
  *aff'd*, 77 N.Y.2d 890, 568 N.Y.S.2d 900 (1991)...................................................................11

*Angio-Medical Corp. v. Eli Lilly & Co.,*
  720 F. Supp. 269 (S.D.N.Y. 1989).................................................................................8

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006)........................................................................................................15

*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.,*
  120 Ill. App. 3d 254, 458 N.E.2d 115 (1983) ...........................................................9

*Bank of China v. NBM LLC,*
  359 F.3d 171 (2d Cir. 2004)..........................................................................................19

*Beck v. Prupis,*
  529 U.S. 494 (2000)........................................................................................................19

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007)...............................................................................................5, 18

*Belvision, Inc. v. M & G Electronics, Inc.,*
  134 A.D.2d 313, 520 N.Y.S.2d 790 (2d Dep't 1987) ...............................................6

*Bhd. of Locomotive Eng'rs Div. 269 v. Long Island R.R. Co.,*
  85 F.3d 35 (2d Cir.1996)................................................................................................12

*Browning Avenue Realty Corp. v. Rosenshein,*
  774 F. Supp. 129 (S.D.N.Y. 1991)..........................................................................17, 18

*Castellano v. Board of Trustees,*
  937 F.2d 752 (2d Cir.1991)............................................................................................12

*County Vanlines Inc. v. Experian Information Solutions, Inc.,*
  317 F. Supp. 2d 383 (S.D.N.Y. 2004), *aff'd*, No. 04-2982, 2005 WL 3117211
  (2d Cir. Nov. 22, 2005), *cert. denied*, 127 S.Ct. 349 (2006) .............................9, 10

*Davis v. Costa-Gavras,*
  619 F.Supp. 1372 (S.D.N.Y. 1985)..............................................................................7

*Diaz v. Espada,*
  8 A.D.3d 49, 778 N.Y.S.2d 38 (1st Dep't 2004) .............................................. 10-11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Dillon v. City of New York*,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) .................................................6, 8

*Economy Carpets Manufacturers & Distributors v. Better Business Bureau*,
    361 So. 2d 234 (La. App. 1 Cir. 1978), *cert. denied*, 440 U.S. 915 (1979)..............................9

*Elite Funding Corp. v. Mid-Hudson Better Business Bureau*,
    165 Misc. 2d 497, 629 N.Y.S.2d 611 (Sup. Ct. Westchester Co. 1995).......................9, 10, 11

*Ford v. Clement*,
    834 F.Supp. 72 (S.D.N.Y. 1993), *aff'd*, 29 F.3d 621 (2d Cir. 1994) .......................................7

*Geddes v. Princess Properties Int'l Ltd.*,
    88 A.D.2d 835, 451 N.Y.S.2d 150 (1st Dep't 1982) .................................................6

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir.1980)..................................................................6

*Grynberg v. Alexander's Inc.*,
    133 A.D.2d 667, 519 N.Y.S.2d 838 (2d Dep't 1987) ........................................6, 10

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir.1990)..................................................................14

*Hollander v. Cayton*,
    145 A.D.2d 605, 536 N.Y.S.2d 790 (2d Dep't 1988) ........................................9, 11

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)......................................13

*Immuno AG. v. J. Moor-Jankowski*,
    77 N.Y.2d 235, 566 N.Y.S.2d 906, *cert. denied*, 500 U.S. 954 (1991) ...................................11

*John Paul Mitchell Sys. v. Quality King Distributors, Inc.*,
    No. 99 Civ. 9905, 2001 WL 910405 (S.D.N.Y. Aug. 13. 2001) .......................................17, 19

*Kahn v. Friedlander*,
    90 A.D.2d 868, 456 N.Y.S.2d 482 (3d Dep't 1982) .................................................6

*Karedes v. The Ackerley Group, Inc.*,
    423 F.3d 107 (2d Cir. 2005)..................................................................11

*Kimm v. Lee*,
    No. 04 Civ. 5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) *aff'd sub nom.*,
    *Kimm v. Chang Hoon Lee and Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006)............13, 15, 18

iii

# TABLE OF AUTHORITIES

(continued)

<u>Page(s)</u>

*Papasan v. Allain*,
   478 U.S. 265 (1986)...................................................................................................5

*Raymond Lee Organization, Inc. v. Council of Better Business Bureaus, Inc.*,
   74 Misc. 2d 363, 343 N.Y.S.2d 502 (Sup. Ct. N.Y. Co. 1973) ................................9

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
   No. 07 Civ. 3494, 2008 WL 542596 (S.D.N.Y. Feb. 29, 2008) .............................15

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994).....................................................................................14

*Scholastic, Inc. v. Stouffer*,
   124 F.Supp.2d 836 (S.D.N.Y. 2000)....................................................................7, 8

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479, 105 S.Ct. 3275 (1985).....................................................................13

*Shapiro v. Health Ins. Plan of Greater New York*,
   7 N.Y.2d 56, 60-61,194 N.Y.S.2d 509 (1959).........................................................9

*Trim-A-Way Figure Contouring, Ltd. v. National Better Business Bureau, Inc.*,
   37 A.D.2d 43, 322 N.Y.S.2d 154 (1st Dep't 1971) .................................................9

*Wehringer v. Newman*,
   60 A.D.2d 385, 400 N.Y.S.2d 533 (1st Dep't 1978) .............................................10

*Weldy v. Piedmont Airlines, Inc.*,
   985 F.2d 57 (2d Cir. 1993)........................................................................................6


### STATUTES

18 U.S.C. § 1951....................................................................................................16

18 U.S.C. § 1952................................................................................................18-19

18 U.S.C. § 1961(1)..........................................................................................17, 19

18 U.S.C. § 1962(c) .........................................................................................13, 14

18 U.S.C. § 1964(c) .........................................................................................16, 19

28 U.S.C. § 1367(c)(3)............................................................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES (CONT.)**

CPLR § 3013..................................................................................................................6

CPLR § 3016(a)...............................................................................................................6


**OTHER AUTHORITIES**

Fed. R. Civ. P. 8.............................................................................................................6

Fed. R. Civ. P. 9(b)...................................................................................................17, 18

Fed. R. Civ. P. 12(b)(6).................................................................................................5

## PRELIMINARY STATEMENT

Defendant, The Better Business Bureau of Metropolitan New York Inc. ("BBB"), [1]

submits this Memorandum of Law in support of its motion to dismiss the complaint herein

("complaint") in its entirety pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P.  The complaint

attempts to aver two claims for relief: (i) defamation and (ii) civil RICO racketeering.  The

complaint should be dismissed as a matter of law because plaintiff has failed to state a claim for

relief under either count.


## STATEMENT OF BACKGROUND FACTS[2]

BBB is a New York not-for-profit corporation which has served the metropolitan New

York area continuously since 1922.  It seeks to promote and foster the highest ethical

relationship between businesses and the public through voluntary business self-regulation,

consumer and business education, and service excellence.  One of BBB's primary goals is to

bring consumers and businesses (both member and non-member businesses) together by

monitoring, investigating, mediating, arbitrating and hopefully resolving complaints between

consumers and businesses.  It has and uses no coercive power whatsoever, but relies instead on

efforts to open a voluntary dialogue between the two parties.  BBB supports and strongly

recommends that consumers first work out their disputes directly with the businesses at issue,

---

[1]     To the best of BBB's knowledge, the other captioned defendant, The Better Business Bureau, Inc. (d/b/a The Better Business Bureau Serving Metropolitan New York, d/b/a BBB of Metropolitan New York, Inc. a/k/a BBB, a/k/a Better Business Bureau, a/k/a The Better Business Bureau of the State of New York, Inc.) does not exist, and thus no appearance is being made on its behalf.  However, the d/b/a names The Better Business Bureau Serving Metropolitan New York, BBB of Metropolitan New York, Inc., and Better Business Bureau all are commonly used by BBB.  The caption and docket should be amended accordingly.

[2]     While this motion to dismiss is based on the averments of plaintiff's complaint, those averments need to be understood in the context of uncontroversial background facts generally describing BBB's business and operating procedures.

whether members or nonmembers, before seeking BBB intervention. *See* BBB's website at:

https://odr.bbb.org/odrweb/public/GetStarted.aspx

Plaintiff, Ben Hur Moving & Storage, Inc. ("plaintiff"), a business which provides moving and storage services, was a member of BBB from about 1990 through December of 2005. (Cmplt. ¶¶ 6, 7)  Plaintiff was not only a member of BBB, but was also a member of BBB's Member Identification Program ("MIP").  As discussed below, MIP participation permits a member ("MIP member") to display a special BBB logo and requires it to participate in a strictly enforced consumer-driven dispute resolution program. *See* BBB's website's description of MIP at:

www.newyork.bbb.org/WWWRoot/SitePage.aspx?site=24&id=fd64fdc8-d6d0-483e-a375-0cf334c76632

While there is no additional fee for becoming a MIP member, a participant is required to undertake additional substantial dispute resolution obligations to the consumer.  Each MIP member pre-commits to first attempt to resolve consumer disputes directly with its customers without the need for BBB intervention through mediation or arbitration. *Id.*

Complaints against BBB members and non-members are treated alike and their BBB mediation outcome statistics are each reported on the BBB website.  However, a member who is also a MIP member is held to a far higher obligation and has pre-committed to attempt to promptly resolve the dispute in good faith directly with its customer without BBB mediation intervention.  The consumer is promptly advised of the pre-committed MIP member's obligations and the consumer's right to contact a pre-designated complaint handler for the MIP business in an attempt to resolve his complaint directly and most expediently with the business itself.  If the parties successfully resolve their issues directly between themselves without any need for BBB mediation intervention, there is thus no BBB-resolved/mediation complaint outcome statistic to report on the BBB website.  However, the consumer is further advised and

strongly encouraged to inform the BBB on his inability to resolve the dispute directly with the business or if the business is simply unresponsive. At the consumer's sole option, the dispute is then sent directly to BBB mediation. The MIP business has already pre-committed – and must submit – to BBB mediation. <u>Just as with non-members and non-MIP members, the mediation outcome statistics are reported on the BBB's website</u>. Simply stated, such BBB-resolved/mediated complaint outcome statistics are reported for <u>both members and non-members</u>. Moreover, should the MIP member's mediation prove unsuccessful, once again, at the consumer's sole option, he may elect in most cases BBB binding arbitration with the MIP member. MIP is thus a thoroughly consumer-driven process holding MIP members to a <u>far higher and more onerous standard than non-members</u>. It is intended to avoid unnecessary escalation of disputes and encourage and facilitate expedited resolution at the earliest feasible instance (*i.e.*, directly between the consumer and business, without the need for BBB mediation intervention) while also according consumers important additional dispute resolution options to which the MIP member has pre-committed. This BBB philosophy of avoiding unnecessary escalation extends to all disputes: the BBB website <u>strongly encourages</u> consumers to resolve their disputes with <u>any</u> business (non-member, MIP member and non-MIP member) directly with the business <u>before</u> even filing a complaint with BBB. Moreover, such MIP members who advertise with their special BBB logo may actually encourage <u>more</u> consumers to contact the BBB with complaints about their business than non-members displaying no BBB logo.

Indeed, some prospective BBB members may choose not to become MIP members because they do not wish to pre-commit to such additional, strictly enforced, onerous, consumer-driven dispute resolution obligations. The goals are directly in line with BBB's longstanding values, mission and vision for a most ethical, honest and fair marketplace. It must also be noted

that <u>all members and non-members alike</u> can equally qualify for the BBB's highest rating of

"satisfactory" – members do not qualify for any higher rating than is <u>equally and fully available

to all non-members</u>.

BBB's website describes its vision and mission in the following language:

> **Our Vision:**
> An ethical marketplace where buyers and sellers can trust each other.
>
> **Our Mission:**
> BBB's mission is to be the leader in advancing marketplace trust.  BBB
> accomplishes this mission by:
>
> - Creating a community of trustworthy businesses
> - Setting standards for marketplace trust
> - Encouraging and supporting best practices
> - Celebrating marketplace role models, and;
> - Denouncing substandard marketplace behavior
>
> BBB sees trust as a function of two primary factors – integrity and performance.
> Integrity includes respect, ethics and intent.  Performance speaks to a business's track
> record of delivering results in accordance with BBB standards and/or addressing
> customer concerns in a timely, satisfactory manner.

In December of 2005 plaintiff's membership was terminated by BBB for failure to timely

pay its dues.  Since that time, plaintiff has made several requests for reinstatement to BBB, but

BBB has refused to readmit it because, among other things, (i) plaintiff's complaint record was

problematic[3] and (ii) plaintiff lacked certain required business operating licenses.  (Cmplt. ¶¶ 9,

11, 25)  Although plaintiff avers that BBB's scheme is designed to extort membership dues from

businesses as "protection money," the BBB has consistently <u>refused to accept</u> plaintiff's

membership dues for over two and a half years.  (Cmplt. ¶¶ 9, 16-19, 25)  As a direct result of

---

[3]      While plaintiff claims that "[b]y no stretch of logic can one complaint made against a moving company
with as great a volume as Plaintiff in a three-year period be considered a 'problematic' complaint record" (Cmplt. ¶
11), plaintiff avers that "complaints made to the BBB about Plaintiff were concealed from the public and not
reported on the BBB's database/website" (*id.* ¶ 34).

BBB's refusal to reinstate its membership, plaintiff now brings this action against BBB, claiming defamation and civil RICO violations.  BBB moves this Court for an order dismissing the complaint in its entirety for failure to state a claim for relief.

## **ARGUMENT**

Although a Court, in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), must accept as true all properly pled factual averments, a complaint cannot survive a motion to dismiss by simply including conclusory legal assertions that track the elements of a claim for relief.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

Indeed, in its recent decision in *Twombly*, the United States Supreme Court clarified that the factual averments in a federal court complaint "must be enough to raise a right to relief above the speculative level," 127 S. Ct. at 1965, and that the complaint must set forth "enough facts to state a claim to relief that is plausible on its face," *id*. at 1974.

## POINT I

## PLAINTIFF FAILS TO STATE A DEFAMATION CLAIM AGAINST BBB

Plaintiff's claim for defamation fails to state a *prima facie* claim against BBB, in that: (i) it is not properly pleaded pursuant to Fed. R. Civ. P. 8; and (ii) it does not contain the required averment of "actual malice."[4]

A.     Plaintiff Has Not Sufficiently Pleaded Its Defamation Claim.

In the federal courts, to properly plead defamation a plaintiff is required to state its claim "in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate." *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980). Specifically, to properly plead defamation a plaintiff must identify: "(1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published."[5] *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993). Plaintiff has failed to aver any of these four necessary pleading elements.

---

[4]     Plaintiff's defamation count is also defective in that the claimed defamatory statements merely constitute BBB's expressions of its opinion regarding plaintiff, and mere expressions of opinion cannot rise to actionable defamation. Since the defamation causes of action are not specific, it is impossible to determine the nature of the professed falsehood, and therefore to make a finding as to whether or not it constitutes mere opinion.

[5]     Under New York State's CPLR § 3013, a claim for defamation must be pled with particularity ("[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences . . . intended to be proved and the material elements of each cause of action or defense"). A defamation claim also must be pled in accordance with CPLR § 3016(a) (imposing the additional requirement that, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint . . . ."). *See also Belvision, Inc. v. M & G Elecs., Inc.*, 134 A.D.2d 313, 313, 520 N.Y.S.2d 790, 791 (2d Dep't 1987); *Kahn v. Friedlander*, 90 A.D.2d 868, 868-69, 456 N.Y.S.2d 482, 484 (3d Dep't 1982) (motion to dismiss defamation claim granted where complaint failed to set forth verbatim the allegedly defamatory words uttered). New York law also requires a plaintiff to plead the complete surrounding context of the allegedly defamatory uttering: *i.e.*, including at least the (1) time, (2) manner and (3) persons to whom the defamatory communication was "published." *Dillon v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999); *Geddes v. Princess Props. Int'l, Ltd.*, 88 A.D.2d 835, 835, 451 N.Y.S.2d 150, 151 (1st Dep't 1982); *Grynberg v. Alexander's Inc.*, 133 A.D.2d 667, 667, 519 N.Y.S.2d 838, 839 (2d Dep't 1987) (complaint properly dismissed for failure to state a cause of action where contextual specificity requirements for pleading defamation not met).

First, plaintiff does not aver that BBB made any defamatory statements concerning it. Rather it admits that, while BBB's current reporting of plaintiff's complaint history is accurate, and claims that BBB misreports its competitors' complaint history by understating their number of complaints, thereby creating the impression that plaintiff's complaints were more frequent than its rivals. (Cmplt. ¶¶ 55-56) Since the complaint only avers that the supposedly inaccurate statements are being made about third parties – not about plaintiff – this element of defamation has not been pled. *Davis v. Costa-Gavras*, 619 F. Supp. 1372, 1376 (S.D.N.Y. 1985) ("A libel action is 'personal to the plaintiff and cannot be founded on the defamation of another.'") (quoting Prosser, *Handbook of the Law of Torts* § 111, at 744 (1971)).

Secondly, plaintiff has not specified (a) who made the defamatory statements, (b) when they were made or (c) to whom they were published. Plaintiff avers only that someone at BBB provided false and inaccurate (undercounted) complaint histories of BBB members to unidentified persons and at unspecified times. (Cmplt. ¶¶ 56-58) These vague averments do not meet the pleading prerequisites for setting forth the defamatory language in the complaint and, without this information, it will be impossible for BBB to prepare a defense. *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) ("'The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself.'") (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)); *Ford v. Clement*, 834 F.Supp. 72, 78 (S.D.N.Y. 1993), *aff'd*, 29 F.3d 621 (2d Cir. 1994) (dismissing complaint because defendant was not on sufficient notice about the nature and content of his supposed false statements, nor did the complaint identify when such statements took place).

For these reasons, plaintiff's defamation claim should be dismissed.

B.      Plaintiff Has Failed To Plead Material *Prima Facie*
        Elements of its Defamation Claim.

Plaintiff's defamation claim also is defective in that the complaint fails to aver the

mandatory *prima facie* elements of defamation.  Under applicable New York substantive law, the

legal elements of defamation are: (1) a false and defamatory statement of fact; (2) regarding

plaintiff; (3) an <u>unprivileged</u> publication of that false statement by defendant to a third party; and

(4) a resulting injury to plaintiff.  *Scholastic*, 124 F. Supp. 2d at 849; *Angio-Medical Corp. v. Eli

Lilly & Co.,* 720 F. Supp. 269, 272 (S.D.N.Y. 1989); *Dillon*, 261 A.D.2d at 38, 704 N.Y.S.2d at

5.  Leaving aside the fact that its complaint fails to properly plead defamation (*supra*), plaintiff

has not pled any facts showing how BBB's alleged publications, which would otherwise be

covered by a qualified privilege, are somehow "unprivileged."  As demonstrated below, under

New York law (in accord with that of other states) BBB enjoys two separate and independent

qualified privileges.  To overcome both of these qualified privileges and aver a viable

defamation claim against BBB, plaintiff must plead (and of course later prove) that, in publishing

incorrect statements about it, BBB acted with "actual malice," sometimes alternatively referred

to as "malice-in-fact." As shown below, plaintiff has failed to aver any form of malice, and

therefore its defamation claims must be dismissed.

Further, as shown above (*see* Point I.A at 6-7, *supra*) plaintiff failed to properly plead

another critical element of its defamation claim – namely, that the alleged defamatory statements

concerned plaintiff itself and not third parties.

1.      Plaintiff Has Failed To Plead "Actual Malice"
        Sufficient To Overcome BBB's Qualified Privileges.

a)      "Common Interest" Privilege.

It is well settled in New York as everywhere else that (a) where a communication is fairly

made by a person in the discharge of some public or private duty upon any subject matter in

which that person has an interest, and (b) where such communication is made to a person or persons with a corresponding interest or duty, it is qualifiedly privileged under the "common interest" doctrine.  *Shapiro v. Health Ins. Plan of Greater New York*, 7 N.Y.2d 56, 60-61,194 N.Y.S.2d 509, 513 (1959); *Hollander v. Cayton*, 145 A.D.2d 605, 606, 536 N.Y.S.2d 790, 792 (2d Dep't 1988); *see also County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 317 F. Supp. 2d 383, 390 (S.D.N.Y. 2004), *aff'd*, No. 04-2982, 2005 WL 3117211 (2d Cir. Nov. 22, 2005), *cert. denied*, 127 S.Ct. 349 (2006) ("[T]here exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter.") (citations and quotations omitted).  Even if BBB's challenged statements were otherwise totally false and defamatory, they cannot be deemed actionable against BBB unless plaintiff pleads and proves that BBB made such statement with "actual malice" or "malice in fact."  *Id.*

Numerous courts, including those in New York, have consistently held that BBB (as well as its affiliated counterpart Better Business Bureaus in other states) enjoys this "common interest" qualified privilege when publishing its reports to prospective consumers who come to BBB or its website seeking rating information regarding prospective retailers or service providers.  *See e.g. Trim-A-Way Figure Contouring, Ltd. v. National Better Business Bureau, Inc.*, 37 A.D.2d 43, 45, 322 N.Y.S.2d 154, 157 (1st Dep't 1971); *Elite Funding Corp. v. Mid-Hudson Better Business Bureau*, 165 Misc. 2d 497, 629 N.Y.S.2d 611 (Sup. Ct. Westchester Co. 1995); *Raymond Lee Organization, Inc. v. Council of Better Business Bureaus, Inc.*, 74 Misc. 2d 363, 365-66, 343 N.Y.S.2d 502, 505 (Sup. Ct. N.Y. Co. 1973); *Audition Div., Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.*, 120 Ill. App. 3d 254, 258, 458 N.E.2d 115, 120 (1983); *Econ. Carpets Mfrs. & Distribs. v. Better Business Bureau*, 361 So. 2d 234 (La. App. 1 Cir. 1978), *cert. denied*, 440 U.S. 915 (1979).  Whenever a defamation complaint fails to aver

actual malice, and the alleged defamatory utterance is protected by the "common interest" qualified privilege, the complaint must be dismissed. *See*, *e.g.*, *Elite Funding Corp*, 165 Misc. 2d at 502, 629 N.Y.S.2d at 614 (summary judgment granted: to defeat the common interest qualified privilege, "it is incumbent upon plaintiff to produce evidentiary facts from which it might be found that the publication was not only false but actuated by express malice or actual ill-will."); *Grynberg*, 133 A.D.2d at 667, 519 N.Y.S.2d at 839.

Here, while the complaint is littered with conclusory references to BBB's general "maliciousness" (*e.g.*, Cmplt. ¶¶ 18, 22, 26, 32, 36, 53, 55, 57), these conclusions are free-floating and factually unsupported. Plaintiff fails to aver that BBB made the alleged defamatory comments with "actual malice" – *i.e.*, with either actual knowledge that it was false or with reckless disregard for whether or not it was false. *County Vanlines*, 317 F. Supp. 2d at 390 ("A plaintiff does not make the requisite showing of malice simply by conclusorily labeling the defamation malicious."). To prove that the defendant acted with a "reckless disregard" for the truth, a plaintiff must present sufficient evidence to permit the conclusion that the defendant <u>actually</u> (and not just <u>constructively</u> or <u>reasonably should have</u>) entertained serious doubts as to the truth of the publication. *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 114 (2d Cir. 2005). Here, no such averments have been pled.

b)     "Fair Comment"/Expression of Opinion.

Not only are BBB's alleged defamatory statements about plaintiff (whatever they might turn out to be) protected by BBB's acknowledged "common interest" qualified privilege, they are also protected by the constitutional privilege of "fair comment" afforded to everyone. A comment or conclusion based upon stated facts constitutes the type of utterance to which the "fair comment" qualified privilege applies. *Wehringer v. Newman*, 60 A.D.2d 385, 390, 400 N.Y.S.2d 533, 537 (1st Dep't 1978); *see also Diaz v. Espada*, 8 A.D.3d 49, 49-50, 778 N.Y.S.2d

38, 40 (1st Dep't 2004) (reversing dismissal of affirmative defense of qualified privilege of "fair comment"). Such comments are protected under both the Federal Constitution and the Constitution of the State of New York. *Immuno AG. v. J. Moor-Jankowski*, 77 N.Y.2d 235, 240, 566 N.Y.S.2d 906, 908.

For example, where BBB has given an "unsatisfactory" rating to a particular plaintiff business for the reasons stated in its reports, every single judicial challenge to that kind of report as "defamatory" has been held protected by the constitutional privilege of "fair comment." *See*, *e.g.*, *Elite Funding Corp.*, 165 Misc. 2d at 502, 629 N.Y.S.2d at 615 (finding that the challenged statements were "protected by the constitutional privilege of 'fair comment' as an expression of opinion based upon stated facts and not actionable").

Alternatively, dismissal of the complaint is likewise required where the defamation averred is predicated only on an objected-to expression of the putative defamer's <u>opinion</u>, and the plaintiff likewise fails to plead actual malice. *Amodei v. N.Y. State Chiropractic Ass'n*, 160 A.D.2d 279, 281, 553 N.Y.S.2d 713, 716 (1st Dep't 1990), *aff'd*, 77 N.Y.2d 890, 568 N.Y.S.2d 900 (1991); *Hollander*, 145 A.D.2d at 606, 536 N.Y.S.2d at 791-92. The basis of this rule is that mere expressions of opinion alone cannot be defamatory.

Here, there is no room for doubt that BBB's publication of business' complaint histories to inquiring consumers is protected by the "common interest" qualified privilege. *See Elite Funding Corp., supra*. Moreover, whatever communications plaintiff objects to here, while not specified, they are almost certainly protected by both the "fair comment" qualified privilege and the "expression of opinion" rule. Plaintiff is therefore required to aver "actual malice" on the part of BBB in publishing these supposedly defamatory comments (beyond mere referencing of

the term) – yet it failed to do so.  Accordingly, plaintiff's defamation claim should be dismissed for failure to overcome BBB's qualified privileges.

C.    The Court Should Decline to Exercise
        Supplemental Jurisdiction Over the Defamation Claim.

In the event that this Court dismisses plaintiff's RICO claim for the reasons stated herein, but does not dismiss plaintiff's defamation claim for the reasons stated above, supplemental jurisdiction over the defamation claim should nonetheless be rejected in the Court's discretion and it should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).  Section 1367(c)(3) provides that "[d]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which the district court has original jurisdiction." Generally, when the grounds for federal jurisdiction no longer exist, federal courts dismiss the state claims.  *See Bhd. of Locomotive Eng'rs Div. 269 v. Long Island R.R. Co.*, 85 F.3d 35, 39 (2d Cir.1996) (quoting *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988)) ("When all bases for federal jurisdiction have been eliminated . . . the federal court should ordinarily dismiss the state claims.").

Moreover, given the early stage of this litigation and the lack of other factors weighing in favor of this Court retaining jurisdiction (*i.e.*, considerations of judicial economy, convenience, and fairness to litigants), this Court should dismiss plaintiff's defamation claim.  *Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Accordingly, if plaintiff's RICO claim is dismissed, this Court should decline to exercise supplemental jurisdiction over the defamation claim and should dismiss it for want of federal subject matter jurisdiction.

## POINT II

### PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED

Courts have recognized that RICO is commonly misused by plaintiffs in an effort to collect treble damages and attorneys' fees. *See, e.g.*, *Kimm v. Lee*, No. 04 Civ. 5724, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom.*, *Kimm v. Chang Hoon Lee and Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006) (setting forth the legislative history of RICO and citing cases). This case is no different. As demonstrated below, plaintiff has failed to make out a colorable claim under RICO. Accordingly, its RICO claim should be dismissed.[6]

Plaintiff brings its RICO claim pursuant to 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). (Cmplt. ¶ 29) To state a claim under RICO, 18 U.S.C. § 1962(c), the plaintiff must aver that the defendant engaged in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), and that (5) the RICO violation was the proximate cause of plaintiff's injury, *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992). As discussed below, Plaintiff has failed to adequately aver any of these five essential elements of this claim.

A.    Plaintiff Has Failed to Adequately Aver A RICO
      "Enterprise" as Distinct From A RICO "Person."

It is well settled in the Second Circuit that to properly aver a RICO claim under § 1962(c), "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern

---

[6]    Since RICO is the sole source of this court's subject matter jurisdiction, when the RICO claim is dismissed the defamation claim – in the unlikely event it might survive this motion – would have to be dismissed also. *Supra,*

of racketeering activity." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d

339, 343-44 (2d Cir. 1994) (collecting cases). The Second Circuit determined that the language

of this RICO section evinces the legislative intent behind it – that the RICO "person" and

"enterprise" must be distinct. *Id.* By virtue of this "distinctness" requirement, a single corporate

entity (such as BBB) cannot simultaneously be both the RICO person and the RICO enterprise.

*Id.* (dismissing RICO count on the ground that the RICO enterprise was not distinct from the

RICO defendant as required by § 1962(c)).[7] Here, plaintiff does not aver a RICO "person"

separate from a RICO "enterprise." To the contrary, plaintiff avers that all the purported

wrongdoing was conducted by a single unitary corporate entity, BBB. (*See*, *e.g.*, Cmplt. ¶¶ 4,

28-30, 32-33) Accordingly, the RICO claim should be dismissed.

 B. Plaintiff Does Not Have Standing To Bring A RICO Claim.

 To bring a claim for violation under § 1962(c), plaintiff must demonstrate that it has

RICO standing. *See Sedima*, 473 U.S. at 496 (requiring a showing that "he [or she] has been

injured in his [or her] business or property by the conduct constituting the violation"); *Hecht v.

Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990) ("[I]n order to have standing, a

plaintiff must show: (1) a violation of section 1962; (2) injury to business or property; and (3)

causation of the injury by the violation."). Specifically, a "pattern of racketeering activity" or

individual predicate acts must be the proximate cause of a plaintiff's injury – factual or "but for"

causation is insufficient. *Id.*

---

<small>(footnote continued . . .)</small>

Point I.C. at 12.

[7] For this same distinctiveness reason, employees of a corporation, acting on behalf of the corporation, cannot form an enterprise under RICO. *Riverwoods*, 30 F.3d at 344 ("[W]here employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.").

Plaintiff avers that BBB perpetrates a fraud on the public (not on plaintiff itself) by underreporting the number of complaints filed against other businesses (*i.e.*, those who are BBB members), while accurately reporting the complaint numbers for non-member businesses like plaintiff, and that plaintiff suffered resulting economic harm and damage to its business reputation by virtue of this dual standard.[8]  (*See*, *e.g.*, Cmplt. ¶¶ 36-37)  Even assuming that this could be proven, plaintiff's alleged injury would merely be indirect and derivative of the primary injury supposedly suffered by consumers.  (Cmplt. ¶ 21 ("The BBB is performing a fraud on the public, which duly relies on its reports for accuracy."); *id.* ¶ 48 ("BBB has committed a scheme to defraud in the first degree . . . by <u>defrauding the general public</u> of the reliability of its public database containing information about businesses.") (emphasis added)).  That the confusion and deception supposedly suffered by consumers may have indirectly harmed plaintiff in the form of its lost business is irrelevant for RICO purposes, because a plaintiff may not recover under RICO for alleged injuries that are derivative of injuries to others.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006) (concluding that a plaintiff who lost market share or competitive advantage as a result of an alleged scheme to defraud a third party suffered only derivative harm and could not maintain a RICO action); *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2008 WL 542596, at *5 (S.D.N.Y. Feb. 29, 2008) ("[W]here there is an 'intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.'").

Thus, even if plaintiff had averred all of the essential elements of a violation of 18 U.S.C. § 1962(c), which it has not, the RICO claim should still be dismissed because plaintiff has not

---

[8]     Damage to reputation is not an injury recoverable under the RICO statute.  *Kimm*, 2005 WL 89386, at *5 n.7 (noting that "harm to [plaintiff's] reputation [is] not compensable in a RICO claim").

averred that <u>it</u> has suffered a <u>direct injury</u> to its business or property from such RICO violation. 18 U.S.C. § 1964(c).  Plaintiff cannot satisfy RICO's proximate cause requirement because its supposed injury is, at best, derivative of alleged injuries to the general public.  *See, e.g.*, Cmplt. ¶¶ 21, 48.

C.    The Predicate Acts Averred in the Complaint
      Are Insufficient To Sustain Plaintiff's RICO Claim.

Plaintiff avers that BBB engaged in the predicate racketeering acts of (i) extortion and grand larceny; (ii) mail fraud, extortion and racketeering via interstate means; and (iii) conspiracy to commit fraud, false advertising and falsifying business records.  (Cmplt. ¶¶ 33-53) As shown below, plaintiff cannot sustain its RICO claim for the additional reason that it has failed to sufficiently aver that these predicate acts form a "pattern of racketeering activity."

1.    Plaintiff Has Not Pled Extortion.

Plaintiff avers that BBB violated the Hobbs Act (18 U.S.C. § 1951) and New York Penal Law 155.30 (grand larceny) by demanding what it characterizes as "protection money" from plaintiff in the form of membership dues.  (*E.g.*, Cmplt. ¶ 35.)[9]  To plead extortion, a plaintiff must show that defendant obtained his property through his consent, but that such consent was "induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  Plaintiff claims that during the period of its BBB membership (1990 through 2005) it had been induced to remain a member by fear of economic harm.  (Cmplt. ¶ 32)  However, nowhere in the complaint does plaintiff explain whether, why or how it had been induced (a) to join BBB in 1990 solely based on this fear (and not on the basis of the legitimate benefits of membership), or (b) to grudgingly maintain its membership over the

---

[9]      Of course, plaintiff's example of BBB's act of  "extortion" (BBB's refusal to admit plaintiff as a member and take its annual dues payments) is topsy-turvy. *See infra* pp. 16-17.

succeeding 15 years through fear alone. (Cmplt. ¶ 7) Thus, the conduct averred by plaintiff

cannot reasonably be construed as extortion by fear. Oddly, despite its contrary allegation that

BBB benefits from having more members so that it can collect greater membership fees (Cmplt.

¶ 16), plaintiff admits that it made numerous attempts to reinstate its membership with BBB in

2005 and later (Cmplt. ¶ 25), but that BBB <u>refused to accept its membership fee</u>. This is indeed

an unusual manner of extorting membership fees.

Nor can plaintiff's grand larceny claim be considered a "predicate act," as grand larceny

is not one of the specifically enumerated "racketeering activities" set forth in 18 U.S.C. §

1961(1). *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, No. 99 Civ. 9905, 2001 WL

910405, at *6 (S.D.N.Y. Aug. 13. 2001).

Racketeering Act One is thus insufficient to support plaintiff's RICO claim.

### 2.    <u>Plaintiff Failed to Adequately Plead the Predicate Acts of<br>Mail Fraud, Extortion and Racketeering via Interstate Means.</u>

Plaintiff's claim that BBB engaged in a scheme to commit mail and wire fraud to defraud

plaintiff and other parties and deprive plaintiff of money by means of mail fraud, extortion and

racketeering similarly fails.

### a)    The Complaint Fails to Plead the Predicate Act<br>Of Mail and Wire Fraud with the Requisite Particularity.

A plaintiff is required to plead the predicate acts of mail and wire fraud with the

particularity required by Fed. R. Civ. P. 9(b) for fraud claims generally. *See, e.g., Browning Ave.*

*Realty Corp. v. Rosenshein*, 774 F. Supp. 129, 137 (S.D.N.Y. 1991) ("[W]here, as here, the

predicate acts of a RICO claim sound in fraud, the pleading of those predicate acts must satisfy

the requirements of Fed. R. Civ. P. 9(b).").  To meet that standard, a RICO plaintiff must specify

the time, place, speaker and content of the misrepresentation. *Id.*  Here, the complaint fails to

properly plead any fraud – mail or otherwise – in compliance with Rule 9(b).  In fact, nowhere in

the complaint (including the four paragraphs of the complaint relating to mail and wire fraud) does plaintiff aver <u>any</u> specifics concerning the person, time, place, content or method of the fraud.  (Cmplt. ¶¶ 23, 38-41)  Accordingly, plaintiff has failed to plead mail and wire fraud with the particularity required by Rule 9(b).

b)    Plaintiff's Averments Do Not Constitute Mail or Wire Fraud.

In addition to its Rule 9(b) shortcomings, the complaint also fails to properly plead the substantive elements of mail and wire fraud.  To do so, plaintiff must aver "(1) participation in a scheme to defraud and (2) knowing use of the interstate mails or interstate wires to further the scheme." *Browning*, 774 F. Supp. at 137.  A scheme to defraud "has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'"  *See Kimm*, 2005 WL 89386, at *4 (citing *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (internal quotations omitted).  Plaintiff has failed to establish that BBB engaged in a scheme to defraud – the complaint merely contains general statements which simply regurgitate the definition of a scheme to defraud (*e.g.*, Cmplt. ¶¶ 23-24, 38, 40).  *Twombly*, 127 S. Ct. at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations omitted).  Thus, the purported mail and wire fraud predicate acts cannot support plaintiff's RICO claim.[10]

c)    The Complaint Does Not Aver Reasonable<br>Reliance On Any Misrepresentations.

Where, as here, a RICO claim is based on alleged predicate acts of mail fraud, a plaintiff does not suffer an injury "by reason of" the RICO violation unless he has relied both

---

[10]    Since plaintiff has failed to properly aver fraud (*supra* Point II.C.2(a) and (b)) and extortion (*supra* Point II.C.1), its purported predicate act for a violation of the Travel Act, 18 U.S.C. § 1952(a)(3), cannot support its RICO

"reasonably" and to his detriment upon the alleged misrepresentations constituting the fraud.

*See*, *e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 176-78 (2d Cir. 2004) ("We therefore now

hold that in order to prevail in a civil RICO action predicated on any type of fraud . . . the

plaintiff must establish 'reasonable reliance' on the defendant's purported misrepresentations or

omissions."); *see also Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (holding that a person injured

by an overt act done in furtherance of a RICO conspiracy, but which does not independently

qualify as a predicate act of racketeering, does not have a claim for relief under § 1964(c)).

Plaintiff has failed to aver reasonable reliance in its complaint.

For the reasons stated above, Racketeering Act Two fails to support plaintiff's RICO

claim.

### 3.    The Complaint Fails to Plead a "Pattern of Racketeering Activity" Arising out of Alleged Violations of State Penal Codes.

The RICO definition of "racketeering activity" is statutorily limited to certain specifically

enumerated substantive crimes. *See* 18 U.S.C. § 1961(1) (2006). As is true with respect to grand

larceny (*see supra* at Point II.C.1 at 17), common law fraud, conspiracy, scheme to defraud, false

advertising, and falsifying business records are not on the list of "racketeering activities"

exclusively enumerated in § 1961(1). *See* 18 U.S.C. § 1961(1); *see also, e.g.*, *John Paul Mitchell*

*Sys.*, 2001 WL 910405, at \*6. Thus, the averments in Racketeering Act Three, even considered

collectively, cannot be considered as part of the "pattern of racketeering activity" required for a

legally sufficient RICO pleading. Accordingly, Racketeering Act Three cannot support

plaintiff's RICO claim.

---

<small>(footnote continued . . . )</small>

claim as plaintiff has failed to show that BBB engaged in an "unlawful activity" per 18 U.S.C. § 1952(b).

As a result of plaintiff's failure to establish a pattern of racketeering activity, the RICO claim should be dismissed.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that this Court enter an order dismissing the entire complaint with prejudice.

Dated: New York, New York
        August 8, 2008

WINSTON & STRAWN

By: _____/s/_____
        C. MacNeil Mitchell
        (cmitchel@winston.com)

200 Park Avenue
New York, New York  10166
(212) 294-6700

*Attorneys for Defendant*
*The Better Business Bureau*
*Of Metropolitan New York Inc.*